L.A.M., Appellee

v.

C.R., Appellant.

Superior Court of Pennsylvania.

Argued Oct. 25, 2011.
Filed Feb. 27, 2012.

Andrew B. Brown, York, for appellant.

Scott A. McPartland, Harrisburg, for appellee.

BEFORE: DONOHUE, OLSON and STRASSBURGER,* JJ.

PER CURIAM:

Order affirmed.

Judge DONOHUE files a dissenting opinion.

DISSENTING OPINION BY DONOHUE, J.:

Because I conclude that the trial court abused its discretion in permitting Mother to relocate to Boston, I respectfully dissent.

First, I believe the trial court erred in concluding that the provisions of the new Child Custody Act do not apply. The first docket entry in this matter is Mother's custody complaint, which she filed on November 3, 2010. In her complaint, Mother sought both an award of primary custody of the children and permission to relocate. The trial occurred on March 21, 22, and 24, 2011.

The new Child Custody Act ("the Act") became effective on January 24, 2011. *See* 23 Pa.C.S.A. § 5321, *Credits* (stating the effective date of the new Custody Act is January 24, 2011). In drafting this new law, the Legislature intended that "[a] *proceeding* under the [prior custody act] which was commenced before the effective date of this section shall be governed by the law in effect at the time the proceeding was initiated." 2010 Pa. Legis. Serv. Act 2010–112 (H.B.1639) (emphasis added). In *E.D. v. M.P.*, 33 A.3d 73 (Pa.Super.2011); this Court recently considered the meaning of the word "proceeding" as used in this statute:

This latter directive is susceptible to at least two interpretations, depending upon the meaning assigned to the term 'proceeding.' If a 'proceeding' refers to the entirety of a custody action, *i.e.*, from the initial filing of a request for custody and including all subsequently decided issues (*e.g.*, requests for relocation, modification, and enforcement), then the directive would require the application of the provisions of the former Child Custody Act [23 Pa.C.S.A. §§ 5301–5315, *repealed* ] for any custody case filed prior to January 24, 2011. If, on the other hand, a 'proceeding' is distinguished from a custody 'action,' such that various 'proceedings' (e.g., for relocation, modification, and enforcement) take place within the context of a custody 'action,' then all such proceedings initiated after January 24, 2011 would be governed by the new Act—even if the original custody action was filed prior to its January 24, 2011 effective date. We note that the new Act does not expressly define the term 'proceeding.' To the contrary, it appears to use the terms 'action,' 'proceeding,' and 'matter' interchangeably. *See, e.g.*, 23 Pa.C.S.A. § 5323 ('an action under this chapter'); § 5327 ('any action regarding the custody of the child'); § 5331 ('a contested custody proceeding'); § 5335 ('the custo-

---

* Retired Senior Judge assigned to Superior Court

dy proceedings'); § 5321 ('any child custody matter'); § 5340 ('a child custody matter').

The object of statutory interpretation is to ascertain and effectuate the intent of the legislature. 1 Pa.C.S.A § 1921. We must assume that the legislature did not intend an absurd or unreasonable result, and in this regard we may consider the practical consequences of a particular interpretation. *Id.* at § 1922; *Commonwealth v. Daikatos* [*Diakatos* ], 708 A.2d 510, 512 (Pa.Super.1998). With these principles in mind, in our view the legislature intended to distinguish between an 'action' for custody and subsequent 'proceedings' in connection therewith. This interpretation provides for the broadest possible application of the procedures and legal standards in the new Act. Under the alternative interpretation, the provisions of the old Act (repealed under section 2 of the new Act) would continue to apply to all aspects of every custody action filed before January 24, 2011—and would continue to apply in those actions for many years into the future, an absurd and unreasonable result. Because in our view the legislature intended for the provisions of the new Act to apply to all matters relating to child custody after the Act's effective date, the new Act applies to all custody proceedings commenced after January 24, 2011.

*Id.* at 76–78.

As this excerpt makes clear, our focus in *E.D.* was to determine what the Legislature intended by use of the word "proceeding". Our conclusion was driven by the recognition that the Legislature intended the terms of the Act to have the broadest impact possible; thus, we distinguished between the filing of the initial action and the discrete proceedings that occur in connection with the overarching custody action.

The Majority concludes that because Mother filed her relocation petition prior to the effective date of the Act, the terms of the Act do not apply. Thus, they conclude that "proceeding" means the filing of a document that seeks relief and they both cite *E.D.* in support of their conclusions.

With all due respect, *E.D.* is not so limited in its holding. Of note, in *E.D.* both the father's petition for relocation and the mother's request for modification were filed after the effective date of the Act, and so we did not have to consider whether the date of the filing of those pleadings or the subsequent date of the hearing thereon constituted the "proceeding" triggering the applicability of the Act. This case is different because Father's petition was filed prior to the effective date of the Act, but the hearing was convened after the effective date. The hearing was a discrete proceeding in the overarching custody action and the terms of the new Act were applicable to it. Indeed, Section 5337(h) of the Act provides the basis for the court's consideration of the evidence established at a hearing, not the standards applicable to filing a request for relocation.[1] Accordingly, in the case at bar, it is not the date of the filing of the complaint and the request to relocate that determines whether the Act applies, but the date of the hearing on Mother's complaint and petition to relocate. I can conceive of no reason to avoid the application of the standards articulated by the Legislature in this evidentiary proceeding in order to determine the best interests of the child. This conclusion allows for the "broadest possible application of the procedures and legal standards in the new Act[,]" *id.* at 77, thereby furthering the intent of the Legislature. As the

---

**1.** "In determining whether to grant a proposed relocation, the court shall consider the following factors...." 23 Pa.C.S.A. § 5337(h). See page 6, *infra* for full text.

custody trial in the case at bar occurred nearly two months after the Act became effective, I believe that its provisions applied and therefore, the trial court erred in applying the prior law.[2]

Second, I believe that the trial court erred in reaching its decision to allow Mother to relocate. Section 5337 of the Act governs requests for relocation, and § 5337(h) enumerates ten factors that a trial court must consider when ruling on a custodial parent's request to relocate.[3] Prior to the new law's enactment, requests for relocation were governed by the three-pronged test first set forth in *Gruber v. Gruber*, 400 Pa.Super. 174, 583 A.2d 434 (1990). Those factors were:

> (1) The potential advantage of the proposed move, economic or otherwise, and the likelihood the move would improve substantially the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent;
>
> (2) The integrity of the motive of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it; and
>
> (3) The availability of realistic, substitute arrangements which will adequately foster an ongoing relationship between the child and the noncustodial parent.

*Tripathi v. Tripathi*, 787 A.2d 436, 439 (Pa.Super.2001).

The § 5337(h) factors incorporate the *Gruber* factors and provide additional factors for the trial court's analysis:

> In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:
>
> (1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.
>
> (2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.
>
> (3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.
>
> (4) The child's preference, taking into consideration the age and maturity of the child.
>
> (5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.
>
> (6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.
>
> (7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.
>
> (8) The reasons and motivation of each party for seeking or opposing the relocation.

**2.** I note that this conclusion does not impact the trial court's determination that Father has standing with regard to the son, to whom all parties agree Father stands *in loco parentis.* The Act codifies the common law pronouncement that a party who stands *in loco parentis* to a child has standing to pursue any form of legal or physical custody of that child. 23 Pa.C.S.A. § 5324.

**3.** See pages 6–7, *infra.*

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h).

Since the *Gruber* factors have been incorporated into this statutory provision,[4] to the extent the trial court considered the correlating factors, it was correct in doing so.[5] However, the trial court's decision seems not to consider the new Act's fifth factor (whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child with either party) or the tenth factor (the existence of any other factor affecting the best interests of the child). By its plain language, § 5337 mandates that a trial court consider these factors. *See id.* ("In determining whether to grant a proposed relocation, the court shall consider the following factors...."). Therefore, because the trial court failed to take these aspects into consideration, I believe that it erred as a matter of law.

However, I also believe that the trial court erred in its analysis of the *Gruber* factors (and their counterparts under the new Act).[6] With regard to the first *Gruber* factor, the trial court concluded that allowing relocation would be in the best interests of the children and would substantially improve the quality of life for Mother and children. This decision was based upon its findings that Mother was historically the primary caregiver; that relocation will allow Mother to pursue her master's degree; that Mother has her teaching certificate in Massachusetts, but not Pennsylvania; that Mother has one close friend in Boston, but no social support in Pennsylvania; and that the children both expressed desire to move to Boston. Trial Court Opinion, 3/28/11, at 5–6. Our review of the record, however, does not support these conclusions.

To begin, the testimony established that while Mother previously wanted to pursue an advanced degree in early medieval history, at the time Mother sought to move, she had not applied to any institution for such course of study.[7] N.T., 3/21/11, at 59. There was also testimony from both Mother and Father that Mother would also be interested in pursuing a Master's degree in political science. *Id.* at 83, 175. Unlike a program in early medieval studies, which may not be available at most colleges or universities, graduate programs in political science are a common offering that certainly would be available to Mother in Pennsylvania, and probably not far from the parties' residences in York County. Therefore, relocation is not necessary for Mother to pursue this educational goal.

***

4. Specifically, factors two, three, six, seven, eight and nine of § 5337(h) can be directly correlated to the *Gruber* factors.

5. Although the first factor under § 5337(h) is not directly implicated in the *Gruber* analysis, the trial court did consider the nature of the parties' relationship with the children.

6. When reviewing an order regarding child custody, "our scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations.... However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record." *Cramer v. Zgela*, 969 A.2d 621, 625 (Pa.Super.2009).

7. In fact, the record is clear that at the time of the hearing, Mother had not applied or been accepted to any institution for any program of study at all. N.T., 3/21/11, at 89.

Moreover, while Mother has obtained her teaching certificate in Massachusetts, the testimony establishes unequivocally that Mother never sought to obtain her teaching certificate in Pennsylvania. Mother testified that this was for a variety of reasons, such as a dearth of teaching positions, her lack of transportation, and the cost and onerous process of obtaining a certificate in Pennsylvania. N.T., 3/21/11, at 8–9, 84–85, 90. However, the record is clear that Mother obtained her Massachusetts certificate while living in Pennsylvania. In my view, the trial court abused its discretion when it weighed in Mother's favor her choice to obtain an out-of-state license in anticipation of a future relocation, especially when her failure to obtain similar credentials in Pennsylvania was due to her decision not to pursue them, not because she was somehow foreclosed from doing so.

Additionally, the record establishes that Mother did not have a job or place to live waiting for her in Boston, nor had she been accepted into any graduate program. *Id.* at 88–89. Without these essentials in place, I do not believe that the record supports the trial court's conclusion that relocation would substantially improve the lives of Mother and the children. Although Mother has a sister and one friend in the Boston area, there was no evidence that these people were providing Mother with housing, a job, or the financial means to support herself and the children upon relocation.[8] Mother has not been employed since the parties moved to Pennsylvania, and the record is silent as to how Mother would finance her relocation and provide for herself and the children as she settles into a new life in Massachusetts.

With regard to the children's desire to move, the trial court found that the older child, the 14-year-old son, wants to relocate mainly to get away from the bullying he has faced at his present school, which has caused his academics to suffer. Trial Court Opinion, 3/28/11, at 6. However, the son testified that his grades were suffering because of the turmoil between his parents and the stress he has been feeling about their separation and the custody proceedings. N.T., 3/21/11, at 186–87. Thus, my review of the record does not support this finding by the trial court. Additionally, although not explicitly detailed by the trial court in its opinion, the seven-year-old daughter's reasons for relocating are hardly compelling; she testified that she wanted to move so that she could go to the beach and have a fenced-in yard for her dog. *Id.* at 217.

Moving on to the third *Gruber* factor, I also believe that the trial court erred in concluding that there are suitable alternative custody arrangements that would adequately foster Father's relationship with the children. The record is simply replete with testimony from every witness, including Mother, that Father has played a large, active role in the children's lives. Father taught the son to read and coached his baseball, basketball and soccer teams. N.T., 3/21/11, at 75–77, 141–42. Father introduced both children to martial arts, and he has also acted as their instructor and practices with the children. Father introduced the children to new experiences by taking them on trips to different parts of the country, assisted them with their homework, and, in the son's case, taught him how to deal with social situations and bullying. *Id.* at 14, 143; N.T., 3/22/11, at 18, 37–8, 50, 138–39. The record reveals Father's relationship with the children as very hands-on and ever-present. Prior to

8. I also question the trial court's determination that these two women constitute a social network for Mother, as the evidence is uncontradicted that Mother's sister has never visited the parties and the children in Pennsylvania. N.T., 3/22/11, at 55.

the parties' separation, Father spent large amounts of time with the children. Thus, I do not believe that the record supports the trial court's conclusion that the relationship Father has built with the children may be adequately maintained with its custody arrangement.

Furthermore, I also note that the trial court seemingly failed to consider the economic impact of this custodial schedule. While it provides that the parents shall share the cost of transportation for custody exchanges, Trial Court Order, 3/28/11, at 5, it seemingly ignored the fact that Mother is without a source of income. Should Mother have difficulty finding suitable employment, Father could face a situation where he will have to pay for all of the transportation—an unfair burden—or forego custodial time.

For these reasons, I conclude that under either the Act or the *Gruber* analysis the trial court abused its discretion in granting the petition for reconsideration. Therefore, I dissent.