J-A17006-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| BARBARA E. STANTON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THOMAS C. STANTON | : | |
| | : | |
| Appellant | : | No. 504 EDA 2024 |

Appeal from the Order Entered January 18, 2024
In the Court of Common Pleas of Chester County Civil Division at No(s):
2017-08713-CU

BEFORE: BOWES, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.: **FILED NOVEMBER 13, 2024**

Thomas C. Stanton ("Father") appeals the January 18, 2024 order that granted the motion filed by Barbara E. Stanton ("Mother") to strike Father's untimely certificate of trial readiness and pre-trial statement, dismiss the demand for trial, impose monetary sanctions, and reimpose the prior final custody order. We affirm.[1]

Mother and Father share legal custody of D.R.S., who was born in May of 2015. Since September 2017, the parties have engaged in extended custody litigation, replete with Father's incessant allegations of Mother's

---

[1] We observe that the portion of the January 18, 2024 order imposing monetary sanctions is not appealable until the trial court determines the amount of fine and costs. *See* Pa. R.A.P. 341(b)(1) (a final order is any order that disposes of all claims and of all parties). Thus, that aspect of the order is not before us in this appeal.

mental health problems and substance abuse, discovery requests, and motions to modify custody. Mother exercised primary physical custody throughout the litigation, maintaining a 60/40 split between October 3, 2017 and December 3, 2019. However, in response to Father's motion for modification, again arguing that Mother has brain damage and is an alcoholic, on December 3, 2019, the parties stipulated to a final custody order wherein they shared equal periods of physical custody.[2]

That arrangement remained in effect until May 9, 2023, when Father filed an emergency petition for special relief after Mother was in a motor vehicle accident that resulted in her hospitalization. Between June 2023 and the October 19, 2023 hearing on the petition for special relief, Father filed several motions seeking the modification of custody, discovery, special relief, recusal, and the reconsideration of various interlocutory orders that were denied by the court. Meanwhile, following an unsuccessful conciliation conference on July 13, 2023, the trial court entered a temporary order that maintained the custody arrangement outlined in the 2019 custody accord. Consistent with Chester County Rule of Civil Procedure ("C.C.R.C.P.")

---

[2] In addition, Mother agreed to undergo drug and alcohol testing and a psychological exam. The ensuing reports concluded that Mother did not demonstrate evidence of drug or alcohol dependency or a clinically significant mood, anxiety, or personality disorder.

J-A17006-24

1914.4.A and 1915.5.B,[3] which govern the prompt disposition of custody cases and conciliation conferences, respectively, the temporary order included the following warning:

_____

[3] Unless otherwise noted, we reference the version of the local rules that governed pre-trial procedure when Father was litigating his motion to modify custody. Effective January 22, 2024, Chester County amended several of the Family Court Rules, including C.C.R.C.P. 1915.4.A and C.C.R.C.P. 1915.5.B after determining that the aspects of the procedure that effectively permitted a custody conciliator to award primary physical custody summarily did not comport with the requirements of Pa.R.Civ.P. 1915.4-3 concerning non-record proceedings before a conference officer. As revised, C.C.R.C.P. 1915.4.A now provides in relevant part, "(2) If the parties are unable to reach a resolution, the Court may enter an interim order, but shall issue an order scheduling a pre-trial status conference at which time all unrepresented parties and counsel shall be present" C.C.R.C.P. 1915.4.A(I)(g)(2). Hence, the local rule no longer provides that the custody conciliator's recommended temporary custody order will convert to a final custody determination after ninety days. As the January 22, 2024 amendments were not effective on any date that is relevant to this proceeding, they are inapplicable.

Furthermore, Father does not challenge the validity of C.C.R.C.P. 1915.4 and C.C.R.C.P. 1915.5 or complain that the court's application of the local rules in this case violated his constitutional right to due process. Instead, as discussed in the body of this memorandum, Father contends that the trial court abused its discretion in applying the rule, dismissing his petition, and reimposing the final custody order prior to conducting discovery. In this vein, Father cites **Connelly v. Connelly**, 266 A.3d 638, 2001 WL 4810418 (non-precedential decision) (Pa.Super 2021), for the proposition that the trial court's January 18, 2024 order dismissing his petition to modify and upholding the original, stipulated order entered in 2019 is not a final appealable order. His reliance upon **Connelly** is misplaced because, unlike in **Connelly**, where we quashed as premature an appeal from an order which purported to change primary physical custody without an evidentiary hearing to determine the child's best interest, the order in the case at bar did not alter primary physical custody. Instead, based on Father's procedural default, the trial court's January 18, 2024 order dismissed Father's motion to modify the existing custody arrangement and consequently upheld the shared custody arrangement that had been the status quo since December 2019. Insofar as the January 18,

*(Footnote Continued Next Page)*

- 3 -

> NOTICE: UNLESS A DEMAND FOR TRIAL, A CERTIFICATE OF TRIAL READINESS AND A PRE-TRIAL STATEMENT HAVE BEEN FILED, THIS ORDER OF THE COURT SHALL BECOME A FINAL ORDER OF THE COURT WITHIN 90 DAYS OF THE MOST RECENT CONCILIATION CONFERENCE. *SEE* C.C.R.C.P. 1915.4.A.

Order, 7/14/23, at 1.

Father responded to the temporary order five days later by filing a demand for trial pursuant to C.C.R.C.P. 1915.4.A.(c)(1)(i) and a supplemental motion for discovery seeking, *inter alia*, police records concerning the May 7, 2023 traffic accident, and the associated medical records, including blood tests and toxicology reports. In addition, Father sought Mother's driving record and information concerning Mother's history of employment and use of prescription drugs.

During the ensuing hearings on Father's petitions for special relief and discovery on October 19, 2023 and December 8, 2023, respectively, the trial court reminded Father of his obligation to perfect his July 19, 2023 demand for trial by filing a certificate of trial readiness and a pre-trial statement within ninety days of the July 13, 2023 conciliation conference pursuant to C.C.R.C.P. 1915.4.A. Nevertheless, Father did not file the necessary documents until

---

2024 order constitutes the complete resolution of Father's motion to modify the existing custody schedule, it was a final, appealable order that disposed of all claims as to all parties. *See e.g. Cramer v. Zgela*, 969 A.2d 621 (Pa.Super. 2009) (reviewing merits of custody order dismissing an incarcerated father's petition for visitation).

December 11, 2023, which is 151 days after the July 13th conciliation conference, and 61 days late.

On December 19, 2023, Mother filed a motion to strike as untimely Father's demand for trial, certificate of trial readiness, and pre-trial statement. Mother sought both the imposition of sanctions pursuant to C.C.R.C.P. 1915.4.A(c)(1)(vi) and enter the temporary custody order as a final custody order pursuant to C.C.R.C.P. 1915.4.A(c)(1)(vii), both of which we reproduce *infra*. On January 18, 2024, the trial court granted Mother's motion and filed the above-referenced order that, *inter alia*, dismissed the demand for trial, and reimposed the prior final custody order pursuant to C.C.R.C.P. 1915.4.A.

This appeal followed. Father failed to file a concise statement of errors complained of on appeal concomitantly with the above-captioned appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). However, Father filed the Rule 1925(b) statement on February 27, 2024, the same date that the trial court entered an order directing him to comply with Rule 1925(b). In response, the trial court authored a Rule 1925(a) opinion suggesting that Father waived his appellate issues by filing a fourteen-page Rule 1925 statement that asserted fifty-four non-specific errors. **See** Trial Court Opinion, 3/6/24, at 2. The court explained, Father "does not actually allege specifics concerning *how* th[e court's January [o]rder was in fact invalid. [He] merely argues [that] he disagrees with the January [o]rder and the local Chester County rule [that the] January [o]rder enforced." **Id**. (footnotes omitted).

- 5 -

We begin with a review of Father's Rule 1925(b) statement. Typically, an appellant's failure to comply with the dictates of Rule 1925(b) will result in waiver. **See**, **e.g.**, Pa.R.A.P. 1925(b)(4)(ii) ("The Statement shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge."); Pa.R.A.P. 1925(b)(4)(vii) ("Issues . . . not raised in accordance with the provisions of this paragraph (b)(4) are waived."). This Court has explained that "Rule 1925 is . . . a crucial component of appellate process." **Commonwealth v. McBride**, 957 A.2d 752, 758 (Pa.Super. 2008) (cleaned up). Typically, to facilitate "meaningful and effective appellate review" of the issues an appellant presents, we require a trial court opinion explaining its reasoning. **Id**. (cleaned up). To aid the trial court in this process, Rule 1925 mandates, among other things, that the appellant "concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(ii). "The Statement should not be redundant or provide lengthy explanations as to any error." Pa.R.A.P. 1925(b)(4)(iv).

As noted *supra*, Father's fifteen-page Rule 1925(b) statement asserted fifty-four interrelated complaints. However, Rule 1925(b)(4)(iv) provides that the sheer number of issues is not sufficient grounds to find waiver if the issues are "non-redundant, non-frivolous[, and] set forth in an appropriately concise manner." **Id**. While Father's prolix Rule 1925(b) statement raised a litany of disjointed issues that were only tangentially relevant to the order on appeal,

- 6 -

we easily discern the crux of Father's fundamental challenge, *i.e.*, whether the trial court abused its discretion in striking as untimely Father's pre-trial documents and entering the July 14, 2023 custody order pursuant to Chester County Local Rule 1915.4A. Indeed, even in finding all issues waived as overly vague, the trial court was nonetheless able to identify Father's primary challenge to the manner that it applied the local rules in this case. **See** Trial Court Opinion, 3/6/24, at 2. Furthermore, to the extent that the specific assertions Father presented in the Rule 1925 statement were opaque, he invoked the protective aspects of Pa.R.A.P. 1925(b)(4)(vi)[4] by declaring in the statement that "certain errors can be identified in general terms given the brevity" of the trial court order. **See** Father's Rule 1925 Statement at 2. As the defects in Father's Rule 1925 statement did not subvert our ability to conduct meaningful review of the order on appeal, we address the merits of Father's issues.

Father presents the following issues for our review.

> 1. Whether the questions of improper *ex parte* communication, Fifth Amendment application and bias require remand, or are now moot given that Mother's Delaware criminal matter has now concluded and this matter can be remanded for the long-sought discovery hearing that both parties agree can now be heard.

---

[4] The relevant subparagraph provides, "If the appellant in a civil case cannot readily discern the basis for the judge's decision, the appellant shall preface the Statement with an explanation as to why the Statement has identified the errors in only general terms. In such a case, the generality of the Statement will not be grounds for finding waiver." Pa.R.A.P. 1925(b)(4)(vi).

2. Did the lower court manifestly abuse its discretion and violate due process by delaying, then further delaying and then permanently declining to even consider modifying the existing custody order in favor of father following mother's recent crashes in which she suffered serious bodily injury and hospitalization while she left child home alone to fend for himself? . . .

. . . .

3. Whether transcript's missing excerpt warrants production of the audio copy, under 210 Pa.Code 1922(c).

4. Whether medical records are discoverable.

Father's brief 6-7.

Neither Father's first, third, nor fourth issue relates directly to the propriety of the January 18, 2024 order dismissing his motion to modify the existing custody order. Instead, these issues concern (1) Father's discovery requests regarding Mother's medical and criminal history;(2) his assertion that Mother did not serve notice of her motion to continue the ensuing discovery hearing based upon her Fifth Amendment protections against self-incrimination; (3) allegations of trial court bias in recommending that Father retain counsel to represent his interests during the custody litigation; and (4) an alleged discrepancy in the notes of testimony. *Id*. at 34-35. As Father's central argument assailing the trial court's application of the local rules subsumes the foregoing contentions, we address these issues together. We frame the collective issue as whether the trial court abused its discretion in relying upon the Chester County Local Rules of Family Court Procedure to delay discovery on Father's motion to modify the existing child custody order

and ultimately dismiss that petition due to Father's failure to timely perfect his demand for trial.

Our standard of review in custody cases is well-settled:

We review custody orders for an abuse of discretion. *See R.L. v. M.A.*, 209 A.3d 391, 395 (Pa.Super. 2019). We will not find such an abuse merely because we would have reached a different conclusion. *See id*. Rather, an abuse of discretion occurs only if the trial court overrode or misapplied the law in reaching its conclusion, or the record shows the trial court's judgment was manifestly unreasonable or the product of partiality, prejudice, bias, or ill will. *See id*.

*Taylor v. Smith*, 302 A.3d 203, 206–07 (Pa.Super. 2023).

Rather than challenge the trial court's application of the local rules directly, Father's brief dedicates an inordinate amount of discussion to an array of arguments concerning the trial court's alleged bias in failing to immediately decide his discovery requests and the manner that the court addressed Mother's motion to continue the custody proceedings based on her privilege against self-incrimination, which Father characterizes as an *ex parte* communication despite both receiving notice of its anticipated presentment and noting his objection to the continuance.[5]  While these allegations of trial

---

[5] The certified record includes Mother's motion for a continuance, which the trial court untimely denied.  The motion certified service "on November 28th, 2023 by email" and noted Father's opposition to the request for the continuance request.  Insofar as Father received sufficient notice of the motion to level his objection, Mother's purported misstep is harmless.  Clearly, notwithstanding Father's characterization, there is nothing in the certified record to suggest that the trial court ascertained *ex parte* information.

court error are not actually before us in this appeal, to the extent that they impact Father's failure to comply with the local rules, we will address them.[6]

First, a primer on the version of the Chester County local rules that governed the application of Pa.R.Civ.P. 1915.4, relating to the prompt disposition of child custody cases at the times relevant to this litigation. Briefly, the local rules in effect at all times relevant to this appeal outlined a three-step process where, upon the completion of the compulsory child custody conciliation conference: (1) the conference officer presented an interim recommendation to the presiding trial court judge, who entered the recommendation as a temporary custody order pending the custody trial;[7] (2)

_____

[6] As Father's complaint about an alleged discrepancy in the court reporter's transcription of the December 8, 2023 hearing does not implicate his central issue, we address that claim separately and summarily reject it. The notes of testimony included in the certified record contain the sentence that Father complains was omitted from a prior version of the transcript. *See* N.T. 12/8/23, at 2 (pagination supplied) ("There has been a request by [Mother] to continue the case because of the ongoing criminal nature of it."). Thus, because the certified record is complete, we deny Father's request to explore the audio tape to determine "whether there is a further issue[.]" Father's brief at 78.

[7] In relation to the conciliation conferences, the local rule provided:

**Rule 1915.5.B.  Custody Conciliator. Conference**.

   (a) The Court shall appoint appropriate persons as custody conciliators.

      . . . .

   (f)(1) An order . . . recommended by the custody conciliator shall issue within forty-eight (48) hours of the conclusion of the conciliation conference.
*(Footnote Continued Next Page)*

- 10 -

pursuant to C.C.R.C.P. 1915.4.A.(c)(4), a party was required to file a demand for trial within ninety days of the conciliation conference; and (3) under C.C.R.C.P. 1915.4A.(c)(1)(i), within thirty days of the date of the demand for trial, the litigant had to supplement the demand with a certificate of readiness and a pre-trial statement. Critically, if the litigant failed to file and perfect **all** of the required documents within ninety days of the most recent conciliation conference, the temporary custody order entered following the conference became final. ***See*** C.C.R.C.P. 1915.4.A(c)(1)(vi) and (vii).

In pertinent part, the local rules provided as follows:

**Rule 1915.4.A. Prompt Disposition of Custody Cases. Custody Hearing Demand. Pre-Trial Statement. Certificate of Readiness. Relocation**.

(a) Initial Contact with the Court.

. . . .

(b) *Listing Trials before the Court*.

(1) All temporary orders for custody unless otherwise specifically indicated on the order shall automatically become a Final Order of the Court no later than 180 days of the filing of the Complaint or Petition to Modify except in those cases where the parties have demanded trial within the time limitations set forth in Pa.R.Civ.P. 1915.4 and C.C.R.C.P. 1915.4.A.(c)(4).
(2) All temporary orders for custody shall include the following language:

---

. . . . The conciliator shall submit the order reflecting the agreement or recommendation to the Court for approval.

C.C.R.C.P. 1915.B.(a) and (f)(1).

NOTICE: UNLESS A DEMAND FOR TRIAL, CERTIFICATE OF TRIAL READINESS AND A PRE-TRIAL STATEMENT HAVE BEEN FILED, THIS ORDER SHALL BECOME A FINAL ORDER OF THE COURT WITHIN 90 DAYS OF THE MOST RECENT CONCILIATION CONFERENCE.

. . . .

(c) Trial.

(1)(i) When trial is demanded by any party, within thirty (30) days of filing the demand or in conjunction with the filing of a petition for relocation, the moving party shall file with the Prothonotary a completed Certificate of Readiness and a Pre-trial statement containing the following information:
   (a) a brief statement of the claim(s) being made by the moving party or the defense(s) made by the responding party;
   (b) a concise statement of the facts;
   (c) a concise statement of the factual or legal issues involved, if any, including citations to applicable statutes or case law, if any;
   (d) a list showing the names and addresses of all witnesses each party intends to call at trial;
   (e) a schedule of all exhibits to be offered at trial;
   (f) a proposed Final Order and Parenting Plan; and
   (g) updated Custody Crimes Affidavit.

. . . .

(vi) Failure to comply with the timely filing of a pre-trial statement may result in the imposition of sanctions including but not limited to exclusion of evidence at trial, fines and costs.

(vii) Failure to comply with the timely filing of a certificate of trial readiness shall result in the recommendation of the custody conciliator being entered as a final order for custody.

. . . .

(4)(a) All demands for trial shall be filed within ninety (90) days of the most recent conciliation conference.

C.C.R.C.P. 1915.4.A.(effective June 15, 2022 - January 22, 2024).

Instantly, the conciliation conference did not produce a consensus as to Father's motion to modify physical custody. Consistent with C.C.R.C.P. 1915.B.(f)(1), the conciliator recommended, and the trial court entered, a temporary order that maintained the shared custody arrangement outlined in the 2019 custody order, *i.e.*, the status quo. The temporary order included the required notice regarding the filing of pre-trial documents and warning that the temporary order would become final if the filings were not perfected within ninety days of the conciliation hearing. Father filed a demand for trial under C.C.R.C.P. 1915.4A.(c)(1)(i), but despite at least two warnings by the trial court, he failed to perfect that submission within thirty days by filing the certificate of readiness and a pre-trial statement that complied with C.C.R.C.P. 1915.4A.(c)(1)(i)(a-g). When he eventually complied approximately five months later, Mother successfully filed the motion to strike the untimely filings and to dismiss the underlying motion to modify custody.

As previously noted, we glean from Father's various assertions that the heart of his argument is that the trial court erred in striking his demand for trial for non-compliance with the local rules when he was unable to certify his trial readiness or file a pre-trial statement without first completing discovery.[8]  **See** Father's brief at 34-35 ("it was an impossibility to make such certification

---

[8] Rule 1915.5.A.(b) provides that "[r]equests for discovery shall be in accordance with C.C.R.C.P. 208, et *seq*. except that no brief shall be required." Significantly, contrary to Father's argument, Rule 208 does not direct the parties to complete discovery prior to certifying trial readiness.

without the discovery having first occurred"). For the following reasons, Father's position is unavailing.

First, to comply with the Rule 1915.4.4. time requirements, Father was **not** required to make any warranties concerning discovery. Chester County mandates that a party mold the certificate of trial readiness to the following form:

> :IN THE COURT OF COMMON PLEAS
> Plaintiff
>
> : CHESTER COUNTY, PENNSYLVANIA
> vs           : NO.
>              : ACTION - LAW
> Defendant : IN CUSTODY

**CERTIFICATE OF TRIAL READINESS**

TO THE FAMILY COURT ADMINISTRATOR:

The undersigned counsel certify this matter to be trial ready.

Estimated time of trial for both sides: _____ (An estimated time of hearing must be entered or the demand will be rejected by the Family Court Administrator and the case will not be listed for trial.)

_____  _____
Attorney for I.D. #     Attorney for I.D. #

_____  _____
Address                  Address

_____  _____
Date: _____     Date: _____
CHOOSE ONE: Evaluations ARE/ARE NOT pending.

***See*** C.C.R.C.P. 1915.4.A(c)(2)(ii) ("The form of Certificate of Readiness required by C.C.R.C.P. 1915.4.A.(c)(1)(i) shall be substantially in . . . form . . . (#12)").

The fact that the authorized trial-readiness form did not require Father to certify that discovery has been completed refutes Father's contention that he could not have made a good-faith assertion of trial readiness before obtaining information about the status of Mother's health and her criminal history. Likewise, Father's related argument concerning his untimely pre-trial statement fails insofar as the local rule did not mandate that he complete discovery prior to filing the necessary statement. Indeed, notwithstanding Father's assertions, the local rule expressly anticipated that parties may need to update their pre-trial statements after filing. *See* C.C.R.C.P. 1915.4.A(c)(3)(i) ("The information contained in all pre-trial statements shall be updated, as appropriate, any time prior to commencement of the custody hearing.").

Furthermore, the record belies Father's contention that the trial court interfered with his ability to comply with the time requirements by refusing to consider his discovery requests. In reality, the trial court repeatedly reminded Father of the procedural obligations that Father must satisfy in order to get his case listed as a prerequisite to discovery.

During the October 19, 2023 hearing on Father's emergency petition for special relief, the trial court first advised Father that he needed to comply with the remaining pre-trial requirements to "get back on the list." N.T., 10/19/23, at 9. When Father explained he "purposely didn't file those documents because we have a discovery motion pending," the trial court further

responded, "I can't give advice [but] I would check with [the Family Division clerk] and say what's going on [with listing a trial date]. I will deal with the discovery thing later." *Id*. at 10.

Again, during December 2023, five months after the conciliation conference, when Father continued to protest about his myriad discovery requests, the trial court reminded him, "You have to get the trial scheduled. That's step one." N.T., 12/8/23, at 6 (pagination supplied). Thereafter, the court continued,

> [T]he problem, [Father], is I don't have anything to even [review.] I was going to tell you, . . . going forward, I'm probably okay down the line with you getting police reports. It seems like you already have [them]. Maybe getting the driving record, which you may not have, **but there's nothing to do it under**. You don't have a case pending and the problem with a subpoena, I used to deal with all the time, if you wanted to subpoena stuff, I have to have a hearing to subpoena people for that hearing. . . . I don't want to prejudge, but all the stuff you're trying to get basically her entire medical history and that I don't even know what authority you have for that, but I don't have to get there yet because you don't have the case filed. **You have to have an actual custody file scheduled to . . . to ask me for discretionary discovery in it**. I have nothing in front of me. That's the issue. So whatever steps you have to take, . . . I would go downstairs to say what do I have to do to get my case listed for trial, and there's a huge backlog.

*Id*. at 7-8 (pagination and emphases supplied).

Thereafter, the court reminded Father,

> And if we ever got to a point where I actually had something in front of me that I could rule on pending [a] custody trial . . ., then I would have to say, okay, here is what I might do [regarding discovery].
>
> . . . .

All the medical stuff, you know, I would have to see authority down the line. I don't want to give a preemptive ruling, but that's my gut **Were not there yet. You have to file a demand for trial first. Follow through with [perfecting] it**.

**Id**. at 9-11 (pagination and emphasis supplied).

Following a brief discussion off the record, the court concluded,

There is no custody trial scheduled that you can, quote, argue for discretionary discovery. I have nothing I can even discuss today about it, but say . . . I'm dismissing [the discovery request] because there's no custody trial, but without prejudice. Once you then get a trial date, we'll someday meet.

. . . .

So for the narrow issue today, . . . I don't have anything to [address] I'm just denying the [discovery] now because there's nothing pending.

**Id**. at 11-12 (pagination supplied).

Father nevertheless persisted and eventually raised the argument that he presents in this appeal, *i.e.*, he could not certify his readiness for trial prior to conducting discovery. **Id**. at 16 (pagination supplied). He opined, "[h]ow is it that I don't have a case? This has been filed. This has been scheduled. How are we here today if we don't have a case?" **Id**. The trial court responded,

That's a very good point. That's why [Mother] objected [to your discovery requests]. You had an emergency petition before that you dealt with. You are now seeking discovery on a future child custody trial that hasn't been listed. **You may have filed a demand for trial but didn't follow through**. That's the fundamental law here and that's why I'm saying do some more research, but I'm not holding it against you this time. Next time I will. Next time I'm gonna go: You wasted our time. I'm ordering attorneys fees. That's where my ruling is.

- 17 -

*Id*. at 17 (pagination and emphasis supplied).

Finally, in relation to Father's assertion of bias, the trial court stated as follows in denying Mother's request for sanctions,

> I have always said this about attorneys['] fees. [Father], so you understand where I'm coming from. If I warn people about wasting the court's time once, then the next time I will be more willing to grant attorneys fees. I am telling you now if I have another situation where you come in and basically, and it's a strong word, but waste our time . . . I will consider attorneys fees. Today, I could have very easily done it. One of the reasons I'm dealing with you first is so you don't rack fees up more. So I'm getting you in and out quickly, but you should go downstairs, get whatever you filed. Then go from there. One of the things, again, down the line is it's not attacking your ego, it's simply just sit down and confer with a family attorney about some of these matters. That's not a reflection on you. Every jurisdiction has different rules within the family court.

*Id*. at 14 (pagination supplied). In light of this excerpt, where the court expressly explained to Father how it would be to his benefit him to speak with a local practitioner, we reject Father's contention that the trial court's persistent recommendation that he retain counsel to help him navigate the procedural pitfalls of this custody litigation was evidence of bias.

Upon review of the foregoing exchanges in which Father ignored the trial court's directive to file the remaining documents needed to perfect his demand for trial and consequently get a trial listing date that would facilitate discovery, the trial court did not abuse its discretion in granting Mother's subsequent motion to strike Father's filings as untimely. Plainly, the local rules governing both discovery and the form and content of the certification of trial readiness

and pre-trial statement belie Father's oft-repeated assertion that he could not comply with the local rule until first completing discovery.

Although Father was proceeding *pro se* in this custody litigation, the record bears out that he is an attorney licensed to practice law in the Commonwealth of Pennsylvania, and he was treated accordingly. **See Smithson v. Columbia Gas of PA/NiSource**, 264 A.3d 755, 760 (Pa.Super. 2021) ("*pro se* status generally confers no special benefit upon an appellant. A *pro se* litigant must comply with the procedural rules set forth in the Pennsylvania Rules of the Court.") (cleaned up). Thus, his *pro se* status provides him no purchase in this situation.

Overall, the certified record demonstrates that the trial court not only explained to Father that his discovery requests could not be addressed until he complied with the established pre-trial procedure, but also that the court provided Father multiple opportunities to cure the procedural defects in his demand for trial, get a listing date, and then complete discovery. As Father rebuffed the trial court's repeated warnings in refusing to abide by Chester County's local rules of procedure designed for the prompt disposition of custody cases, despite repeated warnings regarding the procedural defect in his case, the Court properly entered the January 12, 2024 order striking the untimely demand for trial, dismissing the motion to modify physical custody, and uphold the status quo.

Order affirmed.

Judges Nichols and Sullivan concur in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>11/13/2024</u>