31 A.3d 677 (2011)
D.R.C., Sr.,
v.
J.A.Z.,
v.
Pennsylvania Department of Corrections, Intervenor.
Appeal of Pennsylvania Department of Corrections, Intervenor.
No. 27 MAP 2010.
Supreme Court of Pennsylvania.
Argued October 20, 2010.
Decided November 23, 2011.
*678 Thomas W. Corbett, Jr., Calvin Royer Koons, John G. Knorr III, PA Office of Attorney General, Harrisburg, for Attorney General's Office.
Kathleen Jo Prendergast, Law Offices of Kathleen J. Prendergast, P.C., for DRC.
Robert Mayer Wolff, Camp Hill, Debra S. Rand, PA Department of Corrections, for Pennsylvania Department of Corrections.
BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN JJ.

OPINION
Justice ORIE MELVIN.
In this appeal, we consider the propriety of the order of April 14, 2009 directing Appellant, the Pennsylvania Department of Corrections ("DOC"), to select and pay for the services of a qualified professional to provide counseling to an incarcerated parent who is seeking visitation with his child. Resolution of this question is dependent upon the intended scope of subsections (b) and (c) of section 5303 of Chapter 53 of the Domestic Relations Code, relating to custody. 23 Pa.C.S. §§ 4101-6100. For the following reasons, we reverse and remand for further proceedings.
On February 19, 2004, D.R.C., Sr. ("Father") filed a complaint in the York County Court of Common Pleas seeking visitation with his minor son ("Son")[1] at the State Correctional Institution in Huntingdon, Pennsylvania ("SCI Huntingdon") where *679 he is serving a life sentence for first-degree murder since May 13, 2003. J.A.Z., the custodial parent ("Mother"), steadfastly opposed prison visits for Son. Instead, she requested that visits be postponed until Son reached a sufficiently mature age and could make his own informed decision about visitation. On July 6, 2005, the trial court denied Father's request for visitation, and he timely appealed. On April 25, 2006, the Superior Court vacated and remanded to the common pleas court finding that the trial court erred in failing to hold a hearing concerning Father's visitation request.
On remand, the court issued a pretrial order directing Father to present evidence, pursuant to 23 Pa.C.S. § 5303(b)[2], indicating that he "no longer poses a grave threat of harm to [Son]." Order of April 16, 2007, Certified Record (C.R.) at 32. The court also awarded sole legal and physical custody of Son to Mother and stayed the proceedings until further order. Id. On May 17, 2007, Father submitted the requested evidence to the court, which consisted of his sworn affidavit and pages of testimony from character witnesses at his homicide trial.
On June 26, 2008, the trial court held a telephonic hearing at which Mother, Father, David E. Swisher, a licensed psychologist manager at SCI Huntingdon, and David Stratton, corrections counselor at the prison, testified regarding the type of counseling Father received or was eligible to receive at the prison. Thereafter, the trial court dismissed Father's petition premised upon its conclusion that the language of the statute precluded it from awarding visitation because Father never received the counseling mandated by Section 5303(c).[3] The court provided the following explication:
We could appoint a qualified professional at the institution to design, construct, and administer a program of counseling to [Father] that meets the requirements of the statute. We do not believe we have the authority to order the [DOC], which is not a party to this proceeding, to undertake such an endeavor.

*680 The second alternative the Court has is to appoint an outside private individual to provide such counseling at the institution. That would require the Court to order the institution to cooperate by providing access to both the institution and to this particular inmate, which is something that we doubt that we have the authority to do.
N.T. Hearing, 6/26/08, at 22; C.R. at 19.
Father again appealed to the Superior Court, which found that the trial court erred by not appointing a qualified professional. [D.R.C., Sr. v. J.A.Z.], 969 A.2d 621 (Pa.Super.2009).[4] The Superior Court vacated the order and remanded with the following direction:
It appears from the testimony provided at the hearing by prison personnel that [DOC] and the individual prisons employ the types of qualified professionals that the legislature intended would be used to provide the counseling and evaluations contemplated by the statute. Therefore, we conclude that the court should direct its request for counseling and evaluation to the prison authorities. If the prison authorities conclude that they are not obligated to accept the appointment by the court, they can raise this matter in another action.
Id. at 629. On remand, the trial court directed DOC to choose a qualified professional to evaluate Father by June 12, 2009 and provide him with counseling.
On May 7, 2009, DOC filed a petition to intervene, a motion for stay, and a motion for reconsideration of the trial court's order directing DOC to choose a qualified professional for assessment and counseling. Father responded by filing a motion for appointment of counsel and a motion to strike the petition to intervene and to dismiss the motions for stay and reconsideration. Subsequently, the trial court entered an order resolving all of the pending motions; it granted DOC's petition to intervene and denied DOC's motions for a stay and for reconsideration. The trial court also denied Father's motion for appointment of counsel as well as his motion to strike the petition to intervene and dismiss the motions for stay and reconsideration.
Next, DOC filed a notice of appeal to the Superior Court, and the matter was assigned to the children's fast track.[5] Meanwhile, on July 30, 2009, the trial court held the previously scheduled hearing in order to receive testimony from a qualified professional regarding an assessment of Father.[6] Father and counsel for DOC participated via speakerphone and Mother appeared in person. Counsel for DOC argued that the matter should be stayed until resolution of DOC's appeal of the April 14, 2009 order directing an assessment and counseling. Counsel also advised that no qualified professional had yet been appointed. The trial court stayed the proceedings until resolution of DOC's appeal. The Superior Court affirmed on March 5, 2010. D.R.C., Sr. v. *681 J.A.Z., No. 1167 MDA 2009, 996 A.2d 533 (unpublished memorandum).
We granted allowance of appeal to consider the following interrelated issues:
(1) Does an interpretation of the Domestic Relations Code that requires the Department of Corrections to provide counseling to currently incarcerated felons, including those under a life sentence, so that they may obtain, "custody, partial custody or visitation," of a minor child produce an absurd result?
(2) Can a custody court order the Department of Corrections to provide and pay for parental-custody-related counseling for a state inmate when the Department is not a party to the custody proceedings and where no statute directs that it is to assume this cost?
Since these interrelated issues concern statutory construction, we are presented with a question of law subject to plenary review. In re Erie Golf Course, 605 Pa. 484, 992 A.2d 75, 85 (2010).
In accordance with the Statutory Construction Act, 1 Pa.C.S.A. §§ 1501 et seq., our goal in interpreting a statute is to ascertain and effectuate the intent of the legislature. See 1 Pa.C.S.A. § 1921(a). Generally, the best indication of the General Assembly's intent is the plain language of the statute. Martin v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing, 588 Pa. 429, 438, 905 A.2d 438, 443 (2006). When the words of a statute are clear and free from all ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S.A. § 1921(b). When, however, the words of a statute are not explicit, the intention of the General Assembly may be ascertained by considering a number of specific factors, as discussed more fully below. 1 Pa.C.S.A. § 1921(c).
Dechert LLP v. Commonwealth, 606 Pa. 334, 998 A.2d 575, 579 (2010). "Finally, in ascertaining legislative intent, the Statutory Construction Act requires a presumption that the General Assembly did not intend a result that is absurd or unreasonable." Cash Am. Net of Nev., LLC v. Dep't of Banking, 607 Pa. 432, 8 A.3d 282, 289 (2010) (citing 1 Pa.C.S. § 1922(1)).
With these principles in mind, we start by examining the language of Section 5303 of the Domestic Relations Code.[7] This section, in pertinent part, reads:
§ 5303. Award of custody, partial custody or visitation
(a) General rule.
(1) In making an order for custody or partial custody, the court shall consider the preference of the child as well as any other factor which legitimately impacts the child's physical, intellectual and emotional well-being.
(2) In making an order for custody, partial custody or visitation to either parent, the court shall consider, among other factors, which parent is more likely to encourage, permit and allow frequent and continuing contact and physical access between the noncustodial parent and the child.
(3) The court shall consider each parent and adult household member's present and past violent or abusive conduct which may include, but is not limited to, abusive conduct as defined under the act of October 7, 1976 (P.L. 1090, No. 218), known as the Protection From Abuse Act.
(b) Consideration of criminal conviction.If a parent has been convicted of or has pleaded guilty or no contest to an offense as set forth below, the court *682 shall consider such criminal conduct and shall determine that the parent does not pose a threat of harm to the child before making an order of custody, partial custody or visitation to that parent:
(1) 18 Pa.C.S. Ch. 25 (relating to criminal homicide);
....
(c) Counseling.In making a determination to award custody, partial custody or visitation pursuant to subsection (b), the court shall appoint a qualified professional to provide counseling to an offending parent described in subsection (b) and shall take testimony from that professional regarding the provision of such counseling prior to issuing any order of custody, partial custody or visitation. Counseling, required in accordance with this subsection, shall include a program of treatment or individual therapy designed to rehabilitate a parent which addresses, but is not limited to, issues regarding physical and sexual abuse, domestic violence, the psychology of the offender and the effects of abuse on the victim. If the court awards custody, partial custody or visitation to an offending parent described in subsection (b), the court may require subsequent periodic counseling and reports on the rehabilitation of the offending parent and the well-being of the child following an order relating to custody, partial custody or visitation. If, upon review of a subsequent report or reports, the court determines that the offending parent poses a threat of harm to the child, the court may schedule a hearing and modify the order of custody or visitation to protect the well-being of the child.
23 Pa.C.S. § 5303(a), (b), and (c).
DOC interprets the counseling mandate of section 5303(c) as being applicable to those parents "who are no longer incarcerated whether because they have been placed on probation or parole, had their sentences reversed or commuted, or served their maximum terms." DOC brief at 12. DOC argues that section 5303(c) "makes sense [only] if it is presumed that the convicted parent will be spending unsupervised time with child." Id. at 14 (emphasis in original). DOC notes that prison policy precludes anyone from having unsupervised visitation. Moreover, DOC asserts that while visits with minor children are permitted, "they may be somewhat circumscribed by facility rules, such as prohibiting certain sex offenders from having physical contact visits with minors." Id. n. 2. Thus, DOC urges a reading of section 5303(b) and (c) that applies only to previously incarcerated parents who committed an enumerated offense.
Moreover, as to the practical application of the counseling provision, DOC asserts that any counseling notes and mental health files it compiles have traditionally been protected from inmate review due to the legitimate threat of inmate reprisal against prison personnel. Therefore, DOC submits that any requirement that it provide a mental health assessment of an inmate in conjunction with a custody proceeding that it then would reveal to the inmate would undermine the security-based concern of its current policy.
DOC further raises a fiscal concern, specifically, that its primary purpose in providing counseling is to prepare inmates to return to the community. Here, Father is serving a life sentence; therefore, he would not otherwise be a high priority candidate for counseling services. DOC argues that the Superior Court's decision would oblige DOC to provide counseling services to inmates seeking visitation before inmates nearing the end of their respective sentences, even if the *683 parent inmate has been sentenced to life imprisonment or death. DOC avers:
The Department ... has its own criteria for program placement and, admittedly, the opportunities for those serving a life sentence, such as Father, are more limited than for others. This is because [DOC] manages its resources in such a way as to provide the most programming for those who will be reentering society....
DOC brief at 15-16. Finally, DOC claims that the Superior Court's decision leads to the absurd result that a parent who was incarcerated for one of the enumerated offenses who is subsequently released from prison would have to pay for his own counseling while a currently incarcerated parent would not.
Father counters that it would be illogical to assume that the General Assembly did not contemplate that at least some parents would still be incarcerated when it promulgated a statute requiring consideration of certain criminal convictions, as in this case, that ordinarily involve lengthy terms of incarceration. Father points to the General Assembly's drafting of 23 Pa.C.S. § 5303(b.2), which only precludes an "award [of] custody, partial custody or visitation to a parent who has been convicted of [first-degree] murder ... of the other parent of the child," as indicative of the General Assembly's recognition that a conviction of any other enumerated offense will not bar some form of court-ordered contact between an incarcerated parent and his child.
Father maintains that the language of section 5303(b) unambiguously expresses how the commission of certain crimes should affect a parent's fundamental rights. He submits that the "evaluation and counseling requirements seek to balance the stated goal of allowing for frequent and regular contact with a parent (See 23 Pa.C.S. § 5301 [relating to declaration of policy]) and ensuring the safety, and best interests of the child." Father's brief at 6. Father contends that given the statute's mandate for counseling prior to any award of custody, DOC's interpretation "would create a complete bar to any kind of court-ordered contact between incarcerated parents covered by subsection (b), regardless of the circumstances." In addition, "[s]uch a reading would be absurd with an effect contrary to the intention of the statute and the Constitution." Father's brief at 5-6.
Section 5303(b) directs that custody courts consider the underlying criminal conduct of a parent who has been convicted of an enumerated offense therein, in assessing whether a child would face the threat of harm if the court awarded that parent custody or visitation. Similarly, in its evaluation of any request pursuant to section 5303(b.1) (relating to consideration of criminal charge) for temporary custody or modification of a custody, partial custody, or visitation order, the court is required by subparagraph (2) of this subsection to consider "whether the parent who is or has been charged with [additional enumerated offenses] poses a risk of harm to the child." 23 Pa.C.S. § 5303(b.1)(2). The questions left unanswered by the statute, among others, are how and when the court will make its assessment of the risk of harm to the child under these sections.
The parties, as well as the courts below, apparently agree, at least as applied to section 5303(b), that the counseling mandated by section 5303(c) requires an assessment or evaluation of the offending parent in conjunction with counseling even though the terms "assessment or evaluation" do not appear anywhere within that provision's text. See DOC brief at 14 n.2 (the "court has placed the onus on the [DOC] to provide and pay for (1) a qualified *684 expert to determine if Father requires counseling, (2) ongoing counseling, if needed, and (3) periodic reports to the custody court."); Father's brief at 6 ("The evaluation and counseling requirements seek to balance the stated goal of allowing for frequent and regular contact...."); [D.R.C., Sr. v. J.A.Z.], 969 A.2d 621, 628-29 (Pa.Super.2009) (concluding that "[t]he legislature could not have contemplated the professional's appointment by the court to evaluate and counsel the parent in order to ensure the child's safety [without also] allow[ing] for a mechanism to provide for the costs associated with the professional's appointment.") (emphasis added). Even if we were to agree that the General Assembly must have intended an evaluation as a prelude to providing counseling to an offending parent, there remains the additional uncertainty of whether section 5303(c) was intended to apply to those offending parents who remain incarcerated. Section 5303(b) uses the phrase "has been convicted" of an enumerated offense but makes no mention of incarceration, either past or present. Thus, we are left without any express direction as to what effect, if any, continuing incarceration has on the custody rights of parents who have committed any of the enumerated offenses.
As stated above, in order to ascertain the General Assembly's intent when interpreting "non-explicit" statutory text, the Statutory Construction Act of 1972 provides that we may consider, among other matters, the following factors:
(1) The occasion and necessity for the statute.
(2) The circumstances under which it was enacted.
(3) The mischief to be remedied.
(4) The object to be attained.
(5) The former law, if any, including other statutes upon the same or similar subjects.
(6) The consequences of a particular interpretation.
(7) The contemporaneous legislative history.
(8) Legislative and administrative interpretations of such statute.
1 Pa.C.S. § 1921(c).
The legislative history of section 5303 reveals that in 1990 it was significantly amended to the present form now under consideration. This amendment explicitly included various circumstances that a custody court must consider, such as the list of criminal convictions found in subsection (b) and "each parent['s] and household member's present and past violent or abusive conduct." 23 Pa.C.S. § 5303(a)(3). On third consideration before the House of Representatives, one of the bill's sponsors made the following proclamation:
HB 1781 amends the State's custody laws to help prevent children from being subjected to abuse in custody and visitation arrangements. Most of us assume that certain protections or safeguards already exist in the law. Unfortunately, they do not.
We assume that most courts would give paramount consideration to the needs of the child, with the child's safety being a basic need. However, it appears that the power, rights, and control of parents over their children sometimes conflict with the protection and safety of the children.
The legislation that we are considering today would give the courts discretion in making custody decisions but would require the courts to consider each parent and adult household member's present and past violent or abusive conduct in making an order for custody or visitation.

*685 In cases where a parent has been convicted of a serious crime that could endanger the child's welfare, the court must appoint and take testimony from a qualified professional concerning the provision of counseling. In these cases, the court would also have to determine that the parent no longer poses a threat of harm to the child before issuing a custody or visitation order. The court is empowered to require subsequent, periodic counseling and reports on the rehabilitation of the parent and well-being of the child.
Testimony from the committee's hearing on the bill, correspondence from my own constituents, and recent court cases all point to the need for this legislation. Some case examples illustrate the problem:
A physician and her husband, who is also an M.D., get divorced after 13 years of marriage and three children. The main reason for the divorce was the husband's verbal and physical abuse of the wife and children. Battering by the father of the children continued during visitation, when the mother had full custody. The violence and threats to the children increased. The court continued to grant [father] visitation even though the children were physically abused by him. He threatened to kill the children. The current custody order, after all this violence and abuse, has suspended the visitation for the two daughters. The physician who testified before the committee pleaded with the members to protect children and said, "I don't want my children to grow up to be abusive, disturbed adults."
In another case, a mother panicked when she found that her ex-husband, who was convicted of raping their two daughters and had served a prison sentence for the crimes, had been granted visitation and was now requesting sleep-over privileges. Nothing in the law provided any reassurance to the mother that the judge would consider this dangerous.
In a third case, a judge permitted a mother to retain custody of her 6-year-old son even though she had decided to resume living with her boyfriend who had murdered the boy's father. The boy was ordered to remain with his mother rather than [an] uncle. No counseling was arranged for the boy, mother, or murderer, who had been found [not] guilty by reason of insanity and released after 90 days in a State mental hospital. Relatives had indicated that the son wants to kill this man.
These are examples of how the welfare of children too often becomes a secondary rather than primary consideration.
HB 1781 represents an effort to ensure basic protection for children. In drafting this legislation, I took into account testimony received by the committee from a broad cross section of groups representing victims of domestic violence, father's rights, legal services, and advocates for children.
Legislative JournalHouse, Dec. 5, 1989 at 1982 (H.B. 1781) (remarks by Representative Daley) (emphases added).
These remarks and cited case examples illustrate that the genesis of the amendment may have been a concern that the judicial system was ill informed about domestic violence and sexual abuse and its link to childhood trauma occasioned by the children's exposure to acts of violence *686 within the family.[8] Hence, the purpose of section 5303(b) was to make certain that where a parent has been convicted of a serious crime the conduct underlying that crime will be evaluated as an additional factor along with many others that have developed in our decisional law affecting the child's physical, intellectual, and emotional well-being in a court's overarching determination of the child's best interests. Section 5303(b) reflects a legislative decision that parents convicted of certain crimes, such as homicide, pose a greater risk to a child's safety. The mischief the General Assembly sought to remedy was the reintroduction of an offending parent into the child's life without an assessment of that parent's potential threat to the child in custody and visitation arrangements. Consequently, before potentially granting physical access to the child the court is required to assess the offending parent's conduct to determine whether he or she still poses a threat to the child's safety and needs rehabilitative counseling before that parent is awarded any form of custody. The counseling requirement of section 5303(c) serves as an adjunct to the threat-assessment requirement and provides an additional safeguard against the infliction of physical injury upon the child. Similarly, section 5303(b.1) requires the court to consider the conduct of the parent when he or she is merely charged with certain enumerated offenses to determine "whether the parent who is or has been charged with [such offense] poses a risk of harm to the child." 23 Pa.C.S. § 5303(b.1)(2). Again, the objective is to provide an additional procedural safeguard by requiring a preliminary risk-of-harm assessment even where counseling is not mandated.
In theory, 23 Pa.C.S. § 5303(b) and (c) could be applied to currently incarcerated felons, but such an interpretation would be unreasonable. We acknowledge, as Father argues, that some of the enumerated crimes would ordinarily involve lengthy terms of incarceration, and the General Assembly would have been aware of this fact. As the third case example referenced above illustrates, however, the General Assembly was also aware that even in the case of a homicide conviction, a lengthy period of incarceration is not always imposed. Moreover, in his attempt to highlight the problem this legislation sought to redress, the bill's sponsor referenced cases involving only previously incarcerated individuals. We find that this legislative history manifests the General Assembly's intent to prevent the placement of a child into the home of an offending parent without first having engaged in a risk-of-harm assessment.
Examination of Chapter 53 of the Domestic Relations Code in its entirety reveals that many of its provisions and certain of its commands regarding factors for the court's consideration lack relevance in the context of a request for prison visitation. Clearly, an award of any type of physical custody is unavailable to an incarcerated parent. Similarly, it would make no sense for a court to take into consideration "which parent is more likely to encourage, permit and allow frequent and continuing contact and physical access between the noncustodial parent and child," or assess an "adult household member's present and past violent or abusive conduct" *687 as required by section 5303(a)(2) and (3). Likewise, we find that it was not the General Assembly's intent for subsections (b) and (c) to be applied to requests for prison visitation.
We agree with DOC that, due to the strictures of their confinement and the rules of the penal institution, incarcerated parents are unable to engage in the type of physical interaction feared by the drafters of this legislation. Thus, it would serve no significant ameliorative purpose to mandate counseling for every incarcerated offending parent for the limited and closely scrutinized contacts associated with prison visits. A visitation request by an incarcerated parent necessarily stands on different footing than a traditional custody petition. In prison visit cases, the court in fashioning an appropriate order, where it determines visits would be in the child's best interests, is limited to a determination of the number of visits and perhaps some contacts through telephone calls and written correspondence. In the more typical custody proceeding between separated or divorced parents where neither party is incarcerated, there is a broader spectrum of options available to the court in fashioning its order. Moreover, prison visit requests involve additional factors unique to that scenario that courts must consider in evaluating the overarching best interests of the child. For example, in Etter v. Rose, 454 Pa.Super. 138, 684 A.2d 1092, 1093 (1996), the Superior Court recognized some of the factors to be considered in deciding a question of visitation where the parent is incarcerated: (1) age of the child; (2) distance and hardship to the child in traveling to the visitation site; (3) the type of supervision at the visit; (4) identification of the person(s) transporting the child and by what means; (5) the effect on the child both physically and emotionally; (6) whether the parent has and does exhibit a genuine interest in the child; and (7) whether reasonable contacts were maintained in the past. Of course, although not mentioned in Etter, another relevant consideration is the nature of the criminal conduct that culminated in the parent's incarceration, regardless of whether that incarceration is the result of a crime enumerated in section 5303(b). All of these factors can be evaluated by the court without first providing counseling to the inmate. Consequently, we find the counseling required by section 5303(c) is not a prerequisite to a court's engaging in its evaluation of a child's best interest in the context of a request for prison visits.[9] Accordingly, we reverse and remand for the trial court to conduct a hearing on Father's request for prison visitation in an expeditious manner without resort to the application of 23 Pa.C.S. § 5303(b) and (c).[10]
Jurisdiction relinquished.
*688 Chief Justice CASTILLE and Justices BAER and McCAFFERY join the opinion.
Justice EAKIN files a concurring opinion.
Justice BAER files a concurring opinion, in which Chief Justice CASTILLE and Justice McCAFFERY join.
Justice SAYLOR files a concurring and dissenting opinion, in which Justice TODD joins.
Justice EAKIN, concurring.
Here, we have been asked to decide whether a trial court can compel the Department of Corrections (DOC) to provide counseling as part of an inmate's attempt to obtain visitation with his child. I agree with Justice Saylor that there is no basis, in statute or case law, to impose the cost of counseling on the DOC. Had the General Assembly wished the DOC to provide this counseling, it could have readily done so. This ends the analysis. Thus, it is unnecessary to address whether the Domestic Relations Code requires currently incarcerated inmates, such as Father, to undergo counseling when seeking visitation with their children. I also agree with the majority, contrary to any suggestion by the legislative history, the judiciary is all too well aware of the risk domestic violence poses.
Therefore, I respectfully concur in the result.
Justice BAER, concurring.
I join in full the Majority's astute analysis, I write merely to observe that this case includes a common misstatement of the law. Upon the initial remand by the Superior Court, the trial court directed the father to present evidence the he "no longer poses a grave threat of harm" to the child. See Majority Opinion at 679 (quoting Order of April 16, 2007, Certified Record at 32). While our courts have used the term "grave harm," I emphasize that the statute at issue in this case, which has since been repealed, and the recent amendments provide universally for the consideration of whether the parent poses a risk or threat of "harm". See 23 Pa.C.S. § 5303(b) (providing that "the court shall consider such criminal conduct and shall determine that the parent does not pose a threat of harm to the child before making an order of custody, partial custody or visitation to that parent") (repealed), 23 Pa.C.S. § 5328 (entitled "Factors to consider when awarding custody" and providing that in ordering any form of custody, a court shall consider "whether there is a continued risk of harm to the child or an abused party"); § 5329 (entitled "Consideration of criminal conviction" and providing that "the court shall consider such conduct and determine that the party does not pose a threat of harm to the child before making any order of custody" to a parent convicted of a listed offense). Accordingly, there is no need for any trial court to find a "grave" threat of harm.
Chief Justice CASTILLE and Justice McCAFFERY join this opinion.
Justice SAYLOR, concurring and dissenting.
To my knowledge, Pennsylvania courts previously have implemented the rather straightforward, plain-language approach of treating prison visitation as a subset of *689 visitation for purposes of the Domestic Relations Code. See, e.g., Etter v. Rose, 454 Pa.Super. 138, 684 A.2d 1092 (1996). I disagree with the majority's holding that there is some (apparently latent) ambiguity in this regard. I also differ, in substance, with the majority's application of the principles of statutory construction. To me, the legislator's comments which are quoted at length by the majority provide little insight into the questions at hand; moreover, I fail to appreciate why counseling is not appropriate to visitation between a prisoner-parent and a child.
From my perspective, this case is less about whether Section 5303 applies to prison visitation than who must pay for the services. In this age of unfunded mandates, this can be a very difficult question. As to the present circumstances, however, I agree with the Department of Corrections that there is no basisstatutory or otherwisefor imposing the burden upon it.
Justice TODD joins this concurring and dissenting opinion.
NOTES
[1] Son was born on March 30, 2001 and is now ten years old.
[2] This section provides:

Consideration of criminal conviction.If a parent has been convicted of or has pleaded guilty or no contest to an offense as set forth below, the court shall consider such criminal conduct and shall determine that the parent does not pose a threat of harm to the child before making an order of custody, partial custody or visitation to that parent:
(1) 18 Pa.C.S. Ch. 25 (relating to criminal homicide)
23 Pa.C.S. § 5303(b).
[3] This subsection provides:

(c) Counseling.In making a determination to award custody, partial custody or visitation pursuant to subsection (b), the court shall appoint a qualified professional to provide counseling to an offending parent described in subsection (b) and shall take testimony from that professional regarding the provision of such counseling prior to issuing any order of custody, partial custody or visitation. Counseling, required in accordance with this subsection, shall include a program of treatment or individual therapy designed to rehabilitate a parent which addresses, but is not limited to, issues regarding physical and sexual abuse, domestic violence, the psychology of the offender and the effects of abuse on the victim. If the court awards custody, partial custody or visitation to an offending parent described in subsection (b), the court may require subsequent periodic counseling and reports on the rehabilitation of the offending parent and the well-being of the child following an order relating to custody, partial custody or visitation. If, upon review of a subsequent report or reports, the court determines that the offending parent poses a threat of harm to the child, the court may schedule a hearing and modify the order of custody or visitation to protect the well-being of the child.
23 Pa.C.S. § 5303(c).
[4] The parties' surnames have been replaced with initials to conform to the caption of the instant appeal.
[5] In conjunction with its filing of the Notice of Appeal, DOC also filed an application pursuant to 42 Pa.C.S. § 702(b) for permission to appeal an interlocutory order with the York County Court of Common Pleas. This application was denied by order dated June 2, 2007.
[6] The trial court apparently proceeded in reliance upon its denial of the requested certification pursuant to 42 Pa.C.S. § 702(b) and Pa.R.A.P. 1701(b)(6), which permits the trial court to "[p]roceed further in any matter in which a non-appealable interlocutory order has been entered, notwithstanding the filing of a Notice of Appeal."
[7] As amended by Act of June 13, 1990, P.L. 230, No. 51, § 1.
[8] Whether or not this was the motivation for the legislation, we do not share the sponsor's viewpoint that the children's welfare all too often becomes a secondary consideration in the domestic violence context. Quite the contrary, we believe the judiciary is well aware of the risk of harm posed to children of domestic violence, and this risk is a primary consideration in its overarching best interests analysis.
[9] Our interpretation of the inapplicability of § 5303(b) and (c) to requests for prison visitation is not meant to suggest that a court considering such a request may not exercise the discretionary authority authorized by Pa. R.C.P. 1915.8, relating to physical and mental examination of persons, where it deems such an evaluation appropriate.
[10] We note that while this matter was pending, Chapter 53 (Sections 5301-5315) was repealed and re-promulgated in a new Chapter 53 codified at 23 Pa.C.S. §§ 5321-5340, eff. January 24, 2011. Act of Nov. 23, 2010, P.L. 1106, No. 112, § 2. In conjunction with this overhaul of the custody laws, the parties filed an ancillary "Joint Motion for Consideration of New Statute and/or to Reopen the Record." The parties sought our consideration of this new statute to determine whether future proceedings in this case should be governed by the old statute or the new statute. In light of our remand, we grant the motion for consideration of the new statute limited to this purpose. By its express terms, section 4 of the new statute provides the answer: "A proceeding under the former provisions of 23 Pa.C.S. Ch. 53 [23 Pa.C.S. §§ 5301-5315] which was commenced before the effective date of this section shall be governed by the law in effect at the time the proceeding was initiated." Since this proceeding was initiated by Father's filing of his complaint on February 19, 2004, the former provisions are applicable on remand. Additionally, we deny the request to reopen the record as moot.