J-S36026-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| J.L.B. | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| S.G.S. | : | |
| | : | |
| Appellant | : | No. 216 MDA 2019 |

Appeal from the Order Entered January 25, 2019
In the Court of Common Pleas of Berks County Civil Division at No(s):
16-2984

BEFORE:   PANELLA, P.J., SHOGAN, J., and PELLEGRINI*, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED AUGUST 30, 2019**

S.G.S. ("Father") appeals *pro se* from the January 25, 2019 order of the Berks County Court of Common Pleas denying his petition for modification of the existing custody order with respect to his son, F.J.S., born in March 2014. Upon careful review, we affirm.

We summarize the relevant facts and procedural history, as described by the trial court. Father has been incarcerated since October 15, 2015, when he was sentenced to a term of incarceration of six to twenty-three months following his guilty plea to simple assault, which he committed against J.L.B. ("Mother") in April 2014. Decision and Order, 1/25/19, at ¶ 4. At the time of the instant proceeding, Father remained incarcerated at State Correctional Institution ("SCI")-Waymart ("Waymart") for additional consecutive sentences for convictions of unsworn falsification to authorities, possession of

_____
* Retired Senior Judge assigned to the Superior Court.

a prohibited offensive weapon, and theft. *Id.* at ¶ 5. Father is eligible for parole in March 2020; however, he was scheduled for an early parole review in April 2019. *Id.* at ¶ 6.

Father has not seen F.J.S., who is now five years old, since Father's imprisonment in October 2015, when F.J.S. was seventeen months old. Decision and Order, 1/25/19, at 2. By order dated June 10, 2016 ("existing custody order"), Mother was granted sole legal and primary physical custody. The order provided that upon Father's release from prison, Father and F.J.S. shall participate in reunification therapy. Upon the successful completion of reunification therapy, Father shall have partial physical custody as the parties may agree. Order, 6/10/16, at ¶ 2(A) and (B).

On August 22, 2017, the trial court entered an agreed-upon order permitting Father to telephone F.J.S. once per week. Father has maintained contact with F.J.S. by telephone since that time. Father also has written letters to F.J.S. Decision and Order, 1/25/19, at 2.

On June 19, 2018, Father filed, *pro se*, the subject petition for modification of the existing custody order, requesting that F.J.S. visit Father once per month at Waymart. The court held a hearing on January 8, 2019, where Father appeared *pro se via* video conferencing from Waymart. Father also presented the testimony of two female friends, R.G. and P.J.H., who testified that they would be willing to transport F.J.S. to the prison to visit

Father. N.T., 1/8/19, at 12–13. Mother appeared with counsel, and she testified on her own behalf.

Father testified that the driving time from Berks County to Waymart is "about two hours." N.T., 1/8/19, at 10. Mother objected to F.J.S. visiting Father at the prison because the driving distance would be difficult on the child. *Id.* at 19. In addition, Mother testified:

> I believe that it would be emotionally detrimental to [F.J.S.] to visit his father in prison, because he is under the understanding now that his father works far away from home, which is a story that his father and I agreed to tell him. [F.J.S.] is old enough now to understand, just through social media, what he sees on the television, what he learns in school that police officers, that the connotation of prison is where bad guys go so-to-speak. I don't want to expose him at this young age to the fact that his father is in prison.
>
> * * *
>
> I'm afraid that will cause him emotional distress.

*Id.* at 20.

Mother also explained that she is opposed to F.J.S. visiting Father at Waymart because Father "has shown himself to have violent tendencies and also to not be exactly forthcoming, and I'm afraid that without a structured, supervised reunification process, there is no filter to the conversations and the interaction that he would have with my son." N.T., 1/8/19, at 21. In short, Mother acknowledged on inquiry by the trial court that she believed Father may say something detrimental to F.J.S. during supervised physical custody at the prison. *Id.*

Mother averred that she does not know R.G. or P.J.H. N.T., 1/8/19, at 22. Mother explained that she was contacted one time, in July 2018, by R.G., through "social media messenger," who asked if she "was the mother of [Father]'s child." *Id.* Mother stated that she "had never known [R.G.] before." *Id.* Mother noted that R.G. "did not have a positive opinion of [Father] and I'm very confused as to why all of a sudden she would be willing to [transport F.J.S.] for him." *Id.* Nevertheless, Mother acknowledged that when Father is released from prison, she would cooperate with the existing custody order that F.J.S. and Father participate in a reunification process. *Id.* at 18. Upon inquiry by the trial court, Mother continued:

THE COURT: And if that process was successful, would you have any problem with your son and [Father] having interaction?

[MOTHER]: No, sir.

THE COURT: Including outside of your presence?

[MOTHER]: Yes, sir.

THE COURT: Yes, sir, it would be all right?

[MOTHER]: It would be all right.

*Id.* at 18–19.

By order entered January 25, 2019, the trial court denied Father's petition. The trial court simultaneously filed an opinion setting forth its factual findings and conclusions of law. On February 5, 2019, Father timely filed a

*pro se* notice of appeal.[1]  The trial court filed its opinion pursuant to Pa.R.A.P.

1925(a) on April 29, 2019.

On appeal, Father presents the following issues for our review:

A)     Did the trial court abuse its discretion and err as a matter of law by neglecting to consider any of the evidence of record in regards to all Petitions and Motions entered, *pro-se*, by [Father] to the trial court, prior to the January 8, 2019, custody hearing?

B)     Did the trial court abuse its discretion and err as a matter of law and fact through due process by not allowing [Father's] mother, [K.M. ("Grandmother")], to provide testimonial evidence on [Father]'s behalf at the January 8, 2019, hearing?

1) [Father] requested [Grandmother] be allowed to speak on his behalf, but was denied by the trial court, as supported by the record of this hearing.

C)     Should the trial court's Order of January 2[5], 2019, be remanded, as not all of its factual findings can be supported by evidence?  Its determinations were unreasonable, since the trial court even overlooked its own ruling in the child's best interests of the child being alienated from [Father], on August 22, 2017.

_____

[1]  Father did not concurrently file a concise statement of errors complained of on appeal with the notice of appeal in contravention of Pa.R.A.P. 1925(a)(2)(i) and (b).  The trial court did not direct Father to file the concise statement. However, three weeks later, on February 26, 2019, Father, *pro se*, filed the concise statement.  Mother argues that Father's appeal should be quashed due to this procedural violation.  Mother's Brief at 18.  Mother asserts no prejudice, nor are we aware of any, arising from Father's failure to file the concise statement concurrently with the notice of appeal.  Therefore, we will not quash or dismiss Father's appeal.  ***See In re K.T.E.L.***, 983 A.2d 745 (Pa. Super. 2009) (Because the filing of the concise statement three days after the notice of appeal did not prejudice the other parties, Superior Court declined to quash or dismiss appeal); ***Cf. J.P. v. S.P.***, 991 A.2d 904, 908 (Pa. Super. 2010) (holding that appellant waived all issues by failing to file a concise statement of errors complained of on appeal despite being directed to do so by the trial court).

This was in regards to [Father's] "*Petition Seeking Hearing for Civil Contempt for Disobedience of Custody Order*"[.]

D) Did the trial court err in making the decision denying [Father]'s request for visitation of his son because it failed to consider the relevant factors set out in **Etter v. Rose**, 454 Pa. Super. 138; 684 A.2d 1092 (1996), that were unique to prison cases pursuant to 23 Pa.C.S. [§] 5328(a)(16)?

E) Should the trial court reconsider [its] denial of visitation of [Father], by his son, [F.J.S.], to include and allow visits via the Department Of Corrections Video Visitation Program?

Father's Brief at 5-6 (emphasis in original).[2]

Our scope and standard of review of child custody orders is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**C.R.F. v. S.E.F.**, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." **Saintz v. Rinker**, 902 A.2d 509,

_____

[2] For ease of disposition, we have re-ordered Father's issues.

512 (Pa. Super. 2006) (citing **Arnold v. Arnold**, 847 A.2d 674, 677 (Pa. Super. 2004)).  This Court "will accept the trial court's conclusion unless it is tantamount to legal error or unreasonable in light of the factual findings." **M.G. v. L.D.**, 155 A.3d 1083, 1091 (Pa. Super. 2017) (citing **S.W.D. v. S.A.R.**, 96 A.3d 396, 400 (Pa. Super. 2014)).

This case is governed by the Child Custody Act ("Act"), 23 Pa.C.S. §§ 5321-5340, which became effective on January 24, 2011.  The Act enumerates the following types of custody awards that a court may order:

> **(a)  Types of award.** — After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:
>
> **(1)** Shared physical custody.
>
> **(2)** Primary physical custody.
>
> **(3)** Partial physical custody.
>
> **(4)** Sole physical custody.
>
> **(5)** Supervised physical custody.
>
> **(6)** Shared legal custody.
>
> **(7)** Sole legal custody.

23 Pa.C.S. § 5323(a).

Instantly, we deem Father's request in the petition for modification as a request for "supervised physical custody," which is defined in the Act as "[c]ustodial time during which an agency or an adult designated by the court or agreed upon by the parties monitors the interaction between the child and

the individual with those rights." 23 Pa.C.S. § 5322; *see also S.T. v. R.W.*, 192 A.3d 1155, 1165 (Pa. Super. 2018) (footnote omitted) ("[I]ncarcerated parents who seek some form of contact with their children—whether it be a request that the children visit them or otherwise—are seeking an award of 'supervised physical custody' as defined under § 5323.").

The trial court was required to consider the following enumerated list of factors in determining F.J.S.'s best interests related to Father's request for supervised physical custody at Waymart:

**§ 5328.  Factors to consider when awarding custody.**

**(a)  Factors.**--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

- 8 -

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

This Court has stated that "**[a]ll** of the factors listed in [§] 5328(a) are required to be considered by the trial court when entering a custody order."

*J.R.M. v. J.E.A.,* 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original).

Further:

> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen factors prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.,* 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013).

*A.V. v. S.T.*, 87 A.3d 818, 822–823 (Pa. Super. 2014).

In deciding custody cases where a parent is incarcerated, this Court has stated that the factors delineated in *Etter v. Rose*, 684 A.2d 1092 (Pa. Super. 1996), which was decided prior to the effective date of the Act, "are now assimilated into § 5328(a) analysis under § 5328(a)(16)." *S.T.*, 192 A.3d at 1167 (citations omitted). Those factors include:

(1)    age of the child;

(2)    distance and hardship to the child in traveling to the visitation site;

(3)    the type of supervision at the visit;

(4)    identification of the person(s) transporting the child and by what means;

(5)    the effect on the child both physically and emotionally;

(6)    whether the parent has and does exhibit a genuine interest in the child; and

(7)    whether reasonable contacts were maintained in the past.

*M.G.*, 155 A.3d at 1094 (quoting *D.R.C. v. J.A.Z.*, 31 A. 3d 677, 687 (Pa. 2011)).[3] In addition, in *M.G.*, we recognized that the *D.R.C.* Court provided another relevant consideration not included in *Etter*, that is, "'the nature of the criminal conduct that culminated in the parent's incarceration, regardless of whether that incarceration is the result of a crime enumerated in section 5303(b).'"[4] *M.G.*, 155 A.3d at 1094 (quoting *D.R.C.*, 31 A.3d at 686).

Turning to the merits of this appeal, Father first asserts that the trial court, in making the instant determination, erred and abused its discretion by failing to consider his *pro se* petitions that preceded the custody hearing on

---

[3] In *S.T.*, our Supreme Court held, "Although we find that the *Etter* factors have assimilated into our current Custody Law, the presumption set forth in *Etter* did not survive the amendments to the custody statutes." *S.T.*, 192 A.3d at 1168. The presumption set forth in *Etter* was as follows:

> While there is no case law which permits denial of the visitation with a parent because of incarceration alone, we believe there is a basis for creation of the presumption, to be rebutted by the prisoner parent, that such visitation is not in the best interest of the child. . . .

*Etter*, 684 A.2d at 1093.

[4] In *M.G.*, we explained that the *D.R.C.* Court interpreted Section 5303, which was repealed and then reenacted as Section 5329 of the Act. We continued, "However, since § 5329 is materially indistinguishable from its predecessor, we follow the guidance that our High Court provided in addressing prison visitations in *D.R.C.*" *M.G.*, 155 A.3d at 1094.

We observe that Section 5329 relates to consideration of criminal convictions by a party or member of the party's household who is seeking any form of custody based on an enumerated list of crimes. The provision directs the trial court to determine whether the party poses a threat of harm to the child prior to making any order of custody.

January 8, 2019. Father's Brief at 21. Father contends that his petitions demonstrate that Mother alienated F.J.S. from him, as well as from Father's mother. *Id.* We discern no error or abuse of discretion.

In its Rule 1925(a) opinion, the trial court explained that Father filed three *pro se* petitions "all making the same complaint that [Mother] was denying him telephone conversations with [F.J.S.,]" and the court disposed of them prior to the petition for modification. Supplemental Memorandum Opinion, 4/29/19, at 1–2. On May 30, 2017, and February 12, 2018, the trial court dismissed Father's first and third petitions. Orders, 5/30/17 and 2/12/18. The trial court resolved Father's second petition, which he titled, "Petition Seeking Hearing for Civil Contempt for Disobedience of Custody Order Pursuant to Pa.R.C.P. 1915.12.," by an agreed-upon order dated August 22, 2017, directing, in part, that Father:

> shall be permitted to have a phone call once a week from the state corrections where he is residing at his cost. The phone call will take place if at all possible on Wednesdays at 3:30 p.m. If Father is unable to place the phone call due to circumstances beyond his control, he shall make the effort to call within the next hour on Wednesday; or failing that, Thursday at 3:30 p.m.

Supplemental Memorandum Opinion, 4/29/19, at 2 (citing Order, 8/22/17, at ¶ 1). At the January 8, 2019 hearing, Father did not complain that Mother denied him telephone calls in violation of the August 22, 2017 order. Therefore, that evidence was not relevant to the court's determination of the best interests of F.J.S. regarding Father's supervised-physical-custody

request. As such, the court did not err in failing to consider Father's prior petitions. Father's first claim fails.

In his second issue, Father avers that the trial court violated his guarantee of due process of law under the Fourteenth Amendment to the United States Constitution by not allowing Grandmother to testify during the subject proceeding. Father's Brief at 28. "Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." ***In re J.N.F.***, 887 A.2d 775, 781 (Pa. Super. 2005).

We discern no abuse of discretion by the court because Father misrepresents the record. Father did not request that the court permit the testimony of his mother during the proceeding. The relevant testimony is as follows:

> THE COURT: [Father], I'm going to conclude the hearing. Do you have anything else you want to say or any questions?
>
> [FATHER]: No, Your Honor. But if you would like to speak to my mother at all about any of this, I know she's there [in the courtroom] as well.
>
> THE COURT: Well, she's not offering to transport [F.J.S. to Waymart], is she?
>
> [FATHER]: No, sir. I just mean about, you know, me wanting the relationship with my son and—
> THE COURT: I have no doubt about that.
>
> [FATHER]: —how much I care for him.

- 13 -

> THE COURT: I'm satisfied you want to have that relationship. And it's very important for you that you do have a good relationship with him and that you learn to be a good example . . . .

N.T., 1/8/19, at 35–36.

Based on the foregoing, the trial court aptly explained in its Rule 1925(a) opinion:

> Father was free to call his mother as a witness if he chose to do so. Instead of calling her as a witness, he asked the [c]ourt whether the [c]ourt wanted to hear from her, providing an offer of proof that she would be appearing as a character witness only on his behalf, not addressing the issues before the [c]ourt, namely Mother's objections to visitation and the logistical difficulties for such a visit. This [c]ourt was satisfied that Father's motives in filing the petition were sincere, and that he truly wants to spend time with his son. . . .
>
> While this [c]ourt certainly would have allowed [G]randmother to testify if Father would have called her as a witness, [Father] did not do so, and her testimony, in any event, would not have contributed evidence that would have impacted on this [c]ourt's decision.

Supplemental Memorandum Opinion, 4/29/19, at 4. We discern no error by the trial court in this regard. Father's second claim fails.

We address Father's third and fourth issues together, as they are related. The crux of Father's assertion in his third and fourth issues is that the trial court abused its discretion in denying his request for supervised physical custody at Waymart in light of Father's undisputed efforts in maintaining his relationship with F.J.S. from prison. We disagree.

In his third issue, Father baldly asserts that the trial court erred and abused its discretion by failing to properly consider the Section 5328(a)

- 14 -

custody factors. Father's Brief at 31. Father suggests that the trial court's "determinations were unreasonable since the trial court even overlooked its own ruling in the minor child's best interests, of [F.J.S.] being alienated from [Father], at its hearing on August 22, 2017, in regards to [Father's] '*Petition Seeking Hearing for Civil Contempt for Disobedience of Custody order Pursuant to Pa.R.C.P. 1915.12*.'" ***Id.*** at 30 (footnote omitted). Father neither explains nor expands this assertion. We have stated that an issue must be developed and supported by citations to relevant authority. ***In re M.Z.T.M.W.***, 163 A.3d 462, 465 (Pa. Super. 2017). Father's contention does neither.

Nevertheless, endeavoring to make sense of Father's claim, the trial court explained in its Rule 1925(a) opinion that contrary to Father's assertion, the court never ruled at the August 22, 2017 hearing that Mother was alienating F.J.S. from Father. Supplemental Memorandum Opinion, 4/29/19, at 5. That hearing involved Father's allegations in his prior petitions regarding Father's telephone contact with F.J.S. ***Id.*** The trial court noted that Father's allegations were "resolved by an agreement setting forth specific terms and conditions to enable the parties to work together in a practical manner. The difficulties in placing the phone calls were based on circumstances appearing at the time. No blame was placed on either Mother or Father for the failure Father was having in making the phone contact." ***Id.***

In his fourth issue, Father baldly asserts that the trial court failed to consider the *Etter* factors. Father's Brief at 33. The trial court rejected this claim. Supplemental Memorandum Opinion, 4/29/19, at 7 (citing Decision and Order, 1/25/19). In fact, the court clarified that it also addressed the additional factor set forth by our Supreme Court in *D.R.C.*, *i.e.*, "'the nature of the criminal conduct that culminated in the parent's incarceration, regardless of whether that incarceration is the result of a crime enumerated in § 5303(b).'" Supplemental Memorandum Opinion, 4/29/19, at 6–7 (citing *D.R.C.*, 31 A.3d at 686).

Our careful review of the record reveals that the trial court addressed all of the Section 5328(a) factors in its opinion accompanying the appealed order. Decision and Order, 1/25/19, at 5–12. The court clarified, "Due to Father's incarceration, [F.J.S.'s] young age, and the fact [F.J.S.] does not have any siblings, several of these factors are not considered relevant." *Id.* at 6 (footnote omitted). As such, the court found Sections 5328(a)(5), (6), (7), and (14) to be irrelevant. *Id.* at 6 n.1. With respect to Section 5328(a)(7), the trial court noted that F.J.S. "is only four (4) years old, was not present at the hearing[,] and this [c]ourt is not privy to any preference of the child." *Id.* The court found that Section 5328(a)(11) favored neither party, and the remaining factors favored Mother. *Id.* at 5–12.

The court found determinative Section 5328(a)(1), "[w]hich party is more likely to encourage and permit frequent and continuing contact between

the child and another party." The trial court concluded that Mother's objections to Father having supervised physical custody at Waymart was reasonable. The court explained:

> The trip, even if Mother is the one making the trip with [F.J.S.], would be an ordeal for [F.J.S.]. Telephone contact, which Father now enjoys with [F.J.S.,] enables Father to have conversations with [F.J.S.] and is far less demanding on [F.J.S.'s] time and welfare. The potential for confusion, or emotional turmoil represent[] risk[s] that outweigh[] the benefit of face-to-face contact with [Father]. The only benefit gained by having the contact is the face-to-face contact, and that assumes that the visits will go well, an assumption that is certainly not guaranteed. Given the difficulties inherent in Father's proposal, and given Mother's willingness to facilitate contact with Father once he is released from prison, through counseling and eventually in a normal partial custody relationship, this [c]ourt finds this factor favors Mother.

Decision and Order, 1/25/19, at 6-7.

The court also found determinative Section 5328(a)(3), the parental duties performed by each party on behalf of the child. The court found:

> Because Mother has always performed all the parental duties for [F.J.S.] since Father's incarceration, this factor is only relevant in the context of the appropriateness of delegating responsibility to another to transport the child to and from the prison. This [c]ourt examined the proposed transporters designated by Father. Both of them appeared to be sincere and willing to help. [R.G.] will be making future trips to visit with Father anyway. That being said, both of them are strangers to Mother. Neither has met [F.J.S.] Mother's reluctance to allow either of these women to take over full care of [F.J.S.] for an extended period of time is reasonable. Further, the child could have significant problems visiting with Father due to the prison setting itself, and if there is something that is said, or something that takes place, Mother should be the one available to respond to [F.J.S.'s] angst, not anyone else.

- 17 -

Decision and Order, 1/25/19, at 8. As such, the court found Mother's objection to F.J.S. being transported to the prison by R.J. or P.J.H. reasonable.

The trial court also found Section 5328(a)(8), the attempts of a parent to turn the child against the other parent, determinative. The court noted that Mother does not have an agenda to turn F.J.S. against Father. Specifically, the court expounded:

> Both parties testified that after Father committed abuse against Mother, but prior to Father's incarceration, Mother and Father would meet one day every weekend to enable Father to have time with [F.J.S.] Despite the abuse that took place, Mother was present with Father during these visits. This [c]ourt is satisfied that the reason Mother has for refusing to allow these visits is the fact that Father is in prison, the prison is an extensive distance from Mother's house, and because [F.J.S.] has not seen Father for some time. This [c]ourt is confident that Mother will allow visits with Father once Father is released, so long as Father does his part in fostering the relationship.

Decision and Order, 1/25/19, at 9. We conclude that the testimonial evidence supports the weighted consideration that the trial court gave to Section 5328(a)(1), (3), and (8) in this case.

Further, our review of the record reveals that the trial court considered the aforementioned *Etter* factors relevant in custody cases where a parent is incarcerated. We recognize that the court did not set forth the *Etter* factors under Section 5328(a)(16); rather, the court considered them in addressing the other Section 5328(a) factors. We discern no abuse of discretion by the court under the circumstances of this case. In discussing the inapplicability of Section 5328(a)(7), the preference of the child, the trial court noted that

F.J.S. was four years old at the time of the proceeding. Decision and Order, 1/25/19, at 6 n.1. The trial court discussed the distance and hardship to the child in traveling to the prison in considering Section 5328(a)(4), the need for stability and continuity in the child's education, family life and community life, and Section 5328(a)(11), the proximity of the residence of the parties. The trial court found that the drive from Mother's house to the prison is two and one-half hours one way, and concluded, "This makes it extremely difficult for [F.J.S.]." *Id.* at 11. Further, the court determined, "Father's proposal would represent a disruption in the continuity of [F.J.S.'s] life." *Id.* at 8–9. The trial court continued:

> Again, the benefit of face-to-face contact with Father, when he already has phone contact and can have conversations[,] is far outweighed by the potential for harm to the child emotionally, if the arrangement does not work well, also considering the logistical difficulties stemming from the distance between the locations.

*Id.* at 9. Likewise, in considering Section 5328(a)(1), the trial court found that the trip to the prison "would be an ordeal for [F.J.S.]" and that telephone conversations are "far less demanding on [F.J.S.'s] time and welfare." *Id.* at 6.

In addition, the court discussed the type of supervision at the prison visits in considering Section 5328(a)(1). The court found that Father's contact with F.J.S. at the prison "would be limited to supervised visitation, in the context of the visit within the prison reception area, supervised by the person bringing [F.J.S.] as well as the Correctional Officers." Decision and Order,

1/25/19, at 6. The court identified the persons who offered to transport [F.J.S.] to the prison and by what means in considering Section 5328(a)(3). Specifically, the court found this factor "only relevant in the context of the appropriateness of delegating responsibility to another to transport [F.J.S.] to and from the prison." *Id.* at 8. The court stated that it "examined the proposed transporters designated by Father. Both of them appear to be sincere and willing to help." *Id.* However, the trial court concluded that Section 5328(a)(3) weighed in Mother's favor insofar as her "reluctance to allow either of these women to take over full care of [F.J.S.] for an extended period of time is reasonable." *Id.*

With respect to the effect on the child both physically and emotionally, the trial court addressed this in its consideration of Section 5328(a)(1) and (4), discussed above. The trial court further discussed it in considering Section 5328(a)(10), which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child. Specifically, the court determined:

> The sole issue at this time is whether face-to-face contact with Father would be emotionally healthy or unhealthy for [F.J.S.]. Neither party can say for sure how the [c]hild would react if he walks into a prison and sees [Father] for the first time in over three (3) years, and sees him as an incarcerated man. . . . Mother is the primary custodian and knows her [s]on better than anyone. She believes this would be harmful. This [c]ourt accepts Mother's belief.

Decision and Order, 1/25/19, at 10.

The court also examined whether Father has and does exhibit a genuine interest in F.J.S. in considering Section 5328(a)(2), the past and present abuse committed by a party or member of a party's household. The trial court found, "Father is sincere, and wants a healthy[,] responsible[,] enduring relationship with [F.J.S.]" Decision and Order, 1/25/19, at 7.

With respect to whether reasonable contacts were maintained by Father in the past, in considering Section 5328(a)(8), the court found, "after Father committed abuse against Mother, but prior to Father's incarceration, Mother and Father would meet one day every weekend to enable Father to have time with [F.J.S.]." Decision and Order, 1/25/19, at 9. Further, in concluding its analysis of the Section 5328(a) factors, the court recognized, "It is likely that there is some bond established [between F.J.S. and Father] through the phone contact and perhaps even from the personal contact Father had before his incarceration." *Id.* at 12.

Finally, with respect to the additional factor not included in *Etter* but required by our Supreme Court in *D.R.C.*, 31 A.3d at 686, regarding the nature of the criminal conduct that culminated in the parent's incarceration, the trial court found as follows in considering Section 5328(a)(2):

> Father admitted to this [c]ourt he pleaded guilty to simple assault against Mother. These actions and Father's other criminal actions are what caused the separation between him and [F.J.S.]. Mother continues to have psychological and emotional scars from the abuse.
>
> Father testified that he is taking responsibility for his actions, and intends to change his life; further[,] there is not any

- 21 -

evidence that he has ever abused [F.J.S.] or intended to abuse [F.J.S.].

Decision and Order, 1/25/19, at 7. In addition, in setting forth its factual findings in the opinion that accompanied the subject order, the trial court included all of Father's criminal conduct that resulted in his incarceration at the time of the proceeding. *Id.* at 2.

Based on the foregoing, we discern no abuse of discretion by the trial court in considering all of the relevant factors in this case where Father requested supervised physical custody of F.J.S. at Waymart. In addition, we deem the trial court's conclusion reasonable in light of the record evidence:

> Father stated to this [c]ourt that he sincerely wants to make a positive change for his own benefit and for that of [F.J.S.]. This [c]ourt believes he is sincere. Further, it is very apparent that Father loves the child and wants to spend as much time with him as possible. . . . For reasons set forth, however, this [c]ourt agrees with Mother that face-to-face contact is not in the best interest of [F.J.S.] at this time. There are too many obstacles to overcome. Most importantly, while good visits with Father may be beneficial for [F.J.S.], if [he] reacts adversely, the harm to [F.J.S.] and to the fostering of the relationship would be significant and in fact could be more detrimental than a positive visit would be beneficial. At this juncture, Father's continuing incarceration does not appear to be long-term, assuming he can make parole. Considering all the factors, it appears that waiting until Father is released would be best for the minor child. At that time the relationship can be re-established.

Decision and Order, 1/25/19, at 12.

In his fifth and final issue, Father, in essence, requests that this Court vacate the custody order and remand the case for the trial court to reconsider Father's request pursuant to the Department of Corrections Video Visitation

Program.  In its Rule 1925(a) opinion, the trial court responds that this issue is without merit because Father "made no claims that such a program exists" during the subject proceeding.  Supplemental Memorandum Opinion, 4/29/19, at 5.  We agree.

Indeed, on inquiry by the trial court, Father acknowledged that the prison does not have any parenting programs where he could see F.J.S. by video.  N.T., 1/8/19, at 25–26.  In addition, Father concedes in his brief, "All relevant information, in regards to this possibility, was not available to [Father] before his January 8, 2019[] hearing, in order for him [to] have presented this to the court as a viable option."  Father's Brief at 32.  Because Father did not present evidence of having supervised physical custody through a video program at Waymart, the court cannot have abused its discretion in failing to consider it.  Father's final issue fails.  Accordingly, we affirm the January 25, 2019 custody order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 08/30/2019

- 23 -